51 CCPA

**Application of William H. MARRA, Tyrrell H. Werner and Warren B. Gilman.**

**Patent Appeal No. 7117.**

United States Court of Customs and Patent Appeals.

April 9, 1964.

Rehearing Denied June 18, 1964.

Robert B. Russell, Russell, Chittick & Pfund, Boston, Mass., for appellants.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, C. J., and RICH, MARTIN, SMITH and ALMOND, JJ.

ALMOND, Judge.

This is an appeal from the affirmance by the Board of Appeals of the examiner's rejection of appellants' patent application.[1]

The invention relates to a method of coating paper with an aqueous composition containing a mineral pigment, an adhesive and a water repellent dimer of an aliphatic ketene. In discussing the prior art, the specification states:

"It has been known for many years to make mineral-coated printing paper by applying to the paper base, an aqueous suspension or slurry containing mineral pigment, such as clay or calcium carbonate, and which also contains water-dispersible binding material or adhesive, such as starch adhesive or casein. The dry weight of adhesive used in a coating composition generally is small in comparison to the weight of pigment in such coating composition, since ordinarily it is desired to use the smallest amount of adhesive which will bind the coating pigment securely to the paper base. Consequently the final layer of dry coating contains capillary pores into which ordinary aqueous ink and printing ink can easily penetrate."

In addition it was found desirable to "size" the paper to make it water repellent. Ordinarily, according to the specification, sizing was accomplished by precipitating rosin with alum, but alum had several disadvantages. The specification notes:

" * * * The purposes of the invention are accomplished by including in the aqueous mineral-coating composition, a sizing agent which has not hitherto been used in mineral-coating compositions."

The sizing agents disclosed are dimers of aliphatic ketenes having hydrocarbon chains of from six to twenty carbon atoms. The ketene dimers are said to "migrate" from the coating to the underlying paper to render it water repellent.

Claim 12 is drawn to a process of applying the composition after preparing an unsized web and thereafter aging the

---

1. Serial No. 25,186, filed April 28, 1960, for "Mineral-Coated Printing Paper."

coated web. The remaining claims, 13 and 14, claim the resultant mineral coated paper.

Claim 12 reads:

"A process for sizing paper comprising the steps of: preparing a substantially unsized fibrous cellulose paper web, preparing an aqueous coating composition consisting essentially of a mineral pigment selected from the group consisting of clay, calcium carbonate, magnesium carbonate, talc, titanium dioxide, barium sulfate, zinc sulfide, satin-white and ochre, an adhesive binder for said pigment selected from the group consisting of starch, casein, soy protein, gelatin, animal glue, British gum, dextrin, polyvinyl alcohol, synthetic latex, and water soluble and alkali soluble cellulose esters, and between 0.25% to 4% by weight of total solids in said coating composition of a water repellent dimer of an aliphatic ketene having from 6 to 20 carbon atoms in its aliphatic hydro-carbon group; applying said coating composition to said web; and thereafter aging said coated web; whereby during said application said coating composition and the water therein penetrate the surface of said web, with said coating composition affixing itself firmly to said web, and said dimer thereafter and during said aging step migrates from said coating composition to the fibers of said sheet and sizes the same."

The issue is whether the Board of Appeals erred in rejecting the claims as unpatentable over the prior art.

The examiner and the board relied on the following references:

Ruff        2,140,394   Dec. 13, 1938
Downey      2,627,477   Feb.  3, 1953
Keim et al. 2,762,270   Sept. 11, 1956

The Ruff patent discloses a method of coating paper with an aqueous composition of starch and a mineral pigment and an adhesive of starch or casein. The patent states:

"* * * A starch alkaline material as prepared according to this invention may be mixed directly with a solution of casein; and may be sized with rosin and alum with practically no loss in sizing efficiency or excessive use of alum."

The Downey patent relates to a higher alkyl ketene dimer emulsion as a substitute for rosin in the sizing of paper. The ketene dimer is said to be reactive with the hydroxyl groups of the cellulose fibers. The Downey patent states:

"* * * For the purpose of sizing paper, which is one of the ultimate processes to which the composition may be applied, the effectiveness of the emulsion as containing organic thickening agents such as, for example, starch, cellulose derivatives, or the like, is particularly surprising inasmuch as the ketene dimer which exhibits reactivity toward the carbohydrate cellulose molecule of the paper fibers is at the same time substantially unreactive both toward the hydroxyl groups of the aqueous medium and toward the hydroxyl groups of a carbohydrate thickening agent."

The Downey patent refers to a copending application which matured into the Keim et al. patent. The latter patent discloses a process of sizing paper with a ketene dimer emulsion, "the new sizing agent being used in an amount astonishingly less than that needed with rosin and rosin substitutes."

The examiner found that Downey "fully anticipates this claim [12] except for the fact that it does not disclose the use of one of the applicant's claimed nine mineral pigments in the patentee's aqueous sizing composition of starch and aliphatic ketene dimer," and that "it would not be unobvious to merely add some clay or calcium carbonate to the sizing composition in Downey since it is conventional in the paper coating art to use mineral pigments as evidenced by Ruff, page 3, column 1, lines 10–27 and admitted by applicants in the specification, page 3, lines 7–11."

The board affirmed, stating:

"We find nothing unobvious for one skilled in the art in incorporating in the sizing composition containing the ketene dimer and starch of Downey, the pigment material of Ruff. Appellants urge that one skilled in the art would think that the pigment would absorb the ketene dimer. Since Downey, column 3, states that the ketene dimer is substantially unreactive toward the starch, from this it is not unexpected that the ketene dimer does not react with the pigment. Downey indicates that other substances, such as soaps, detergents, wetting and dispersing agents and the like can be included in his dimer sizing composition, which substances would necessarily cause more trouble with the action of the ketene dimer than would an inert pigment. Appellants have also urged that the aging step is critical. As the Examiner has pointed out, however, Keim et al. show this in sizing paper with a ketene dimer."

Appellants contend that the term "sizing" is used in the specification as referring to a water repellent agent and that the disclosure of "a sizing agent" in the prior art does not necessarily mean that it is "a sizing agent of a type suitable for appellants' purposes." Another distinction urged is between "coating" of paper and "impregnating" of paper. Appellants argue that Downey and Keim et al. are concerned with paper sized by *impregnating* it with ketene dimer and not by *coating*. Although Ruff contemplates either coating a paper web or impregnating it, appellants submit that rosin size is used only with an impregnating process and not with a coating process. It is argued that adding mineral pigment to the Downey composition does not change the impregnating composition into a coating composition; that it would be expected that the mineral pigment would prevent the ketene dimer from "migrating" into the paper; that combining ketene dimer with a coating composition is unobvious in the absence of knowledge of the extraordinary migrating ability of the ketene dimer; that the prior art did not appreciate the migrating ability of the ketene dimer; and that it is unobvious to age the coated paper.

We agree with the solicitor that it would be obvious to substitute the ketene dimer sizing agent of Downey or Keim et al. for the rosin sizing agent in the aqueous compositions of mineral pigment and starch disclosed in Ruff.

Whatever definitions have been given to the term "sizing agent" in the art, it seems clear that Downey and Keim et al. use the term in the same manner as appellants for the same purpose and for the same material, viz. ketene dimer. The Keim et al. reference specifically suggests substituting ketene dimer for rosin or rosin substitutes in sizing paper. Even a narrow definition of "sizing agent" cannot avoid the fact that the same ketene dimers used by appellants, by any name, are disclosed in the prior art for sizing paper.

We have difficulty accepting the distinction urged by appellants that "coating" differs from "impregnating" in this case. It would appear that a porous material like paper would be impregnated to some extent by an aqueous composition applied "by various coating techniques" as Keim et al. suggests, whether the composition is called "coating" or "impregnating." It seems doubtful that a clearly defined interface between the paper and the coating would result. The differences between coating compositions and impregnating compositions, according to appellants, are in dilution and viscosity. That is, a "coating composition usually has a high-solids content and a relatively high viscosity." It is clear that none of the claims have any limitations on dilution (solids content) or viscosity. The method claim merely recites "applying" the composition which would appear to include both "coating" processes and "impregnating" processes, even if there is a distinction between "coating" and "impregnating," and there is no evidence that the art recognizes a distinction. Ac-

cordingly, we see no justification for concluding that it is unobvious to employ a sizing agent in either a "coating" composition or an "impregnating" composition.

We also see no reason for expecting that mineral pigment should prevent the ketene dimer from sizing the paper. Downey states that the ketene dimer is unreactive towards other ingredients of the sizing composition there disclosed, although it is reactive toward the paper fibers. One skilled in the art would hardly expect the inert clay or other mineral pigment to reduce the effectiveness of the Downey ketene dimer in reacting with cellulose paper fibers. While some of a very thick coating composition would be expected to stay on the surface of even a porous paper, we find nothing unobvious in the fact that some of the ketene dimer reacts with the paper fibers to render them water repellent in view of the Downey disclosure. We note that appellant states that "some of the ketene dimer remains with" the coating. Since only minute amounts of the ketene dimer are used in the first place, and the claims fail to indicate what proportion goes into the fibers, there appears to be nothing which would not be obvious to one of ordinary skill in the art. Since Downey teaches that the ketene dimer will not react with anything present in the coating composition, yet will react with the paper, it seems entirely within the realm of the expected that appellants' composition, containing in addition an inert mineral pigment, behaves in the same fashion as the Downey composition.

The Keim et al. patent specifically states that sizing of the treated paper improves on standing after application of the ketene dimer. We think this is a clear suggestion of the claimed "aging" step and that one working in the art would find it obvious to age the ketene dimer treated paper.

We do not consider it unobvious to combine a ketene dimer sizing agent with a coating composition because the Ruff patent shows that other sizing agents (which ketene dimers were in-

tended to replace) were used in coating compositions. Even if the "migrating ability" is "extraordinary" as alleged by appellants, the claims before us fail to define subject matter which, when considered as a whole, would not be obvious to a person having ordinary skill in the art.

Accordingly, the decision of the board is affirmed.

Affirmed.

SMITH, Judge, dissenting, with whom RICH, J., joins.

The majority opinion seems to be predicated on what is essentially a hindsight reconstruction of the prior art. I cannot rationalize it except as I ignore what seems to me to be the scope of the invention set forth in the specification and claims. I shall, therefore, begin this dissent by stating what I understand to be the invention.

The specification discloses that "According to this invention, a web or sheet of paper is simultaneously sized and coated." This is accomplished in a single operation by applying to the paper web an aqueous coating composition which contains *both* the pigment and the sizing material. The sizing materials which appellants disclose are dimers of aliphatic ketenes. Appellants' mixture of dimer, pigment and an aqueous dispersing medium thus provides in a *single step* a coating for and a sizing of the paper web. The specification also discloses:

"* * * Tests have shown that the dimer is uniformly distributed in the *combination sizing and coating composition*, and that, when such *combination sizing and coating composition* is applied to an unsized or partially sized or wholly sized paper web, at least part of the dimer ingredient migrates to the paper web to provide sizing or additional sizing thereon, and part of said dimer ingredient will, in certain formulas of the improved combination composition later disclosed herein, remain in the final dried coating, thus decreasing the absorption of water

by the final dried coating." [Emphasis added.]

The specification discloses further:

"Tests have shown that these *dimers, when included in a coating composition,* migrate or are transferred from the coating composition to the paper base and provide *sizing* in the paper base. In prior *coating* compositions which contain a *sizing* agent, said sizing agent remains wholly or substantially wholly in the dried coating so that the paper base is not appreciably sized." [Emphasis added.]

Rejected process claim 12 particularly claims:

" * * * preparing an aqueous coating composition consisting essentially of a mineral pigment * *, an adhesive binder for said pigment * * *, and between 0.25% to 4% by weight of total solids in said coating composition of a water repellent dimer of an aliphatic ketene having from 6 to 20 carbon atoms in its aliphatic hydrocarbon group * * *."

Rejected claim 13 calls for the mineral-coated paper per se in which *both* its *fibers* and its *pigmented coating* are sized by a sizing agent defined as "a water repellent dimer of an aliphatic ketene." The claim further requires that the sizing agent is uniformly admixed with the mineral pigment in the coating and that the fibers of the paper web are uniformly sized when the sizing agent migrates from the pigment to the paper fibers.

In claim 14, the paper of the claim is further characterized:

" * * * by said dimer uniformly coating the said pigment at the surface of said coating whereby said pigment is protected by said dimer from the acidity of an acid fountain solution of a lithographic printing press having a pH of about 3.5."

It is to be noted that in all appealed claims, migration of the dimer from the coating to the paper fibers is recited.

Dealing as we are here with highly technical concepts of physical chemistry, I do not think we should ignore, as the majority appears to have done, this physical phenomenon which has been thus stressed by appellants. We are told that the dimer and the aqueous vehicle may be mixed to form a particular type of emulsion and that the pigment is then added thereto. Thus, the specification states:

"If desired, the ketene dimer in liquid form, heated if necessary for convenient use, may be stirred into an aqueous coating composition which includes pigment and adhesive, with or without the addition of an emulsifying agent. The preferred practice is to make an aqueous emulsion of the dimer, and to mix said emulsion into the aqueous coating composition."

The emulsion containing the dimer is, however, disclosed as a particular type of emulsion. Thus appellants state:

" * * * The initial emulsion which is thus formed has a yellow color, and it is an emulsion of water in oil. When about half of the water has been added, the emulsion becomes an emulsion of oil in water, and the original yellow color changes to a white color."

One of ordinary skill in the emulsion art would recognize that the properties of such an emulsion can be affected by the presence of finely divided solids in the continuous phase, and particularly so by such solids as may be present at the interface between the continuous and disperse phases of the emulsion. Here, it seems to me, is a substantial difference between the invention for which appellants seek a patent and the disclosures of the prior art. Here, also, we are dealing with an area of technical skills which can well be beyond those of one ordinarily skilled in the paper sizing and coating field. The particle size of the pigments which are a part of the coating composition is described by appellants as preferably being "in a range from 0.2 to 8 mic-

rons." Such a pigment is known to be a fine powder having a large specific surface area per unit of weight. Such large specific surfaces are known to cause various physical changes in emulsion type vehicles. However, as described in the specification:

"* * * The dimer is uniformly distributed in said aqueous composition, either in the water thereof, or as a coating on a pigment, or both in the water and on said pigment. In the case of our preferred practice of mixing the mineral pigment with at least part of the adhesive material prior to addition of the ketene dimer to the coating composition we believe that a large part of said dimer remains suspended in the aqueous component of said coating composition up to and including the time that the aqueous coating composition is applied to the paper base. We do not however wish to be limited to this theory, because the essential factor is to provide a sizing agent which enters and sizes the paper from the combination composition."

The disclosed invention, therefore, is the provision of a single sizing and coating material which can be placed on the paper web in a single step and in which the dimer used as the sizing agent will be transferred from the coating and can migrate into the paper.

I would agree with appellants that this migration is an unobvious phenomenon in physical chemistry. Normally it would seem that a dimer maintained in the disperse phase of an aqueous emulsion would remain there, or if not, that the forces of attraction and adsorption exhibited by the pigment would prevent the migration of the dimer from the coating to the pigment fibers. Or the presence of such solids at the interface of the oil in water emulsion might cause an inversion of the phases in which case it would be expected that the dimer would be freed and thus would no longer be uniformly distributed in the coating composition.

It is noted further that appealed process claim 12 requires an aging step during which "said dimer * * * migrates from said coating composition to the fibers of said sheet and sizes the same."

The majority opinion concludes that the claimed process and the claimed product are obvious and states:

"We agree with the solicitor that it would be obvious to substitute the ketene dimer sizing agent of Downey or Keim et al. for the rosin sizing agent in the aqueous compositions of mineral pigment and starch disclosed in Ruff."

Undoubtedly this conclusion has its premise in the further statement of the majority that:

"We have difficulty accepting the distinction urged by appellants that 'coating' differs from 'impregnating' in this case. It would appear that a porous material like paper would be impregnated to some extent by an aqueous composition applied 'by various coating techniques' as Keim et al. suggests, whether the composition is called 'coating' or 'impregnating.' It seems doubtful that a clearly defined interface between the paper and the coating would result. The differences between coating compositions and impregnating compositions, according to appellants, are in dilution and viscosity. That is, a 'coating composition usually has a high-solids content and a relatively high viscosity.' It is clear that none of the claims have any limitations on dilution (solids content) or viscosity. The method claim merely recites 'applying' the composition which would appear to include both 'coating' processes and 'impregnating' processes, even if there is a distinction between 'coating' and 'impregnating,' and there is no evidence that the art recognizes a distinction. Accordingly, we see no justification for concluding that it is unobvious to employ a sizing agent in either a

'coating' composition or an 'impregnating' composition."

It seems to me that appellants' position is more realistic than that of the majority on the question of obviousness and I would agree with the position, stated in appellants' brief, that:

" * * * while the art had appreciated that the ketene dimer was an excellent paper sizing agent, the art was totally unappreciative of the ability of the ketene dimer to migrate from a coating composition containing a large amount of mineral pigment prior to appellants' discovery of this property of the ketene dimer and that as a consequence the feasibility and utility of the claimed process were not apparent to the art. One skilled in the art with the cited references on hand would not be induced to carry out the claimed process, i. e., to apply the ketene dimer to a paper sheet through the agency of a pigmented coating composition."

Turning to the references, it is seen that Keim is concerned only with the sizing of the paper web by *impregnating* it with the ketene dimer. He sizes waterleaf paper sheets with a dilute emulsion of the ketene dimer, thoroughly wetting the sheets to the point where the excess emulsion can be removed by squeezing. Admittedly Keim teaches the sizing effectiveness of the ketene dimer. He does not teach, however, that the ketene dimer can and will *migrate* from an applied paper coating to the paper stock, nor does he indicate that the ketene dimer could be applied in admixture with a paper coating pigment to a paper web in a *one-step coating and sizing operation.*

The Downey reference relates to an improvement on the teachings of Keim. Downey teaches that the ketene dimer emulsion can have added to it an organic thickening agent for the purpose of preserving the emulsion. Downey, like Keim, is concerned only with *impregnating* compositions and not *coating* compositions. There is no indication that mineral pigment could be added to the im-

pregnating emulsions, and, more importantly, there is no teaching that the ketene dimer is capable of migrating from a pigmented coating composition into a paper web.

Ruff discloses an improved type of starch sizing agent and adhesive which is admixed with mineral pigment and can be used for either coating a paper web or impregnating (filling) it.

On what basis then can the majority properly conclude from the disclosures of these references that one skilled in the art would be aware of the property discovered by appellants, i. e., that the ketene dimer would migrate from a pigmented coating into the paper web and size it? I find nothing in these references to indicate such a phenomenon. One skilled in this art would, I think, in fact expect the opposite, i. e., that the ketene dimer would *not* migrate, in view of the very minute amounts used, the nature of the emulsion in which it forms the disperse phase, and the very large surface area presented by the pigment of the coating.

The claims can be met by the art only as one indulges in a hindsight combination of the references. Appellants grant that if the combination of references is justified,

" * * * one can then turn to the question of what its inherent properties would be. Appellants' position is, however, that in the absence of knowledge of the extraordinary *migrating ability of minute amounts* of the ketene dimer the teachings of these references would not induce one skilled in the art to attempt the combination. His knowledge and experience would in fact turn him away from doing so. Only by careful experimentation did the appellants come across the surprising discovery of the ability of the ketene dimer to migrate from highly pigmented coating compositions. These references which they were well acquainted with did not tell them this!"

I agree with the statement in appellants' brief:

"The principal point for decision is whether one skilled in the art, in the absence of knowledge about the unusual migrating ability of the ketene dimers and with the knowledge of the effect that a mineral pigment of high surface area has on minor ingredients in coating compositions, would be induced by these references to formulate a pigmented paper coating composition containing the ketene dimer."

In my opinion, neither the claimed process nor the claimed sized, pigmented paper product is obvious within the meaning of 35 U.S.C. § 103 and I would, therefore, reverse the appealed decision.